UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                 :

       -v-                                  :
                             S3 09 Cr. 581 (WHP)
PAUL M. DAUGERDAS,                       :
DONNA GUERIN, and
DENIS FIELD,                             :

             Defendants.                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF DEFENDANT PAUL M. DAUGERDAS SEEKING PERMISSION TO CONDUCT POST-VERDICT JUROR INTERVIEWS


PREET BHARARA
United States Attorney for the Southern
District of New York
Attorney for the United States of America


STANLEY J. OKULA, JR.,
NANETTE L. DAVIS,
JASON P. HERNANDEZ
Assistant United States Attorneys

     – Of Counsel –

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

         -v-                                :
                                                    S3 09 Cr. 581 (WHP)

PAUL M. DAUGERDAS,                          :
DONNA GUERIN, and
DENIS FIELD,                                :

              Defendants.                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF DEFENDANT PAUL M. DAUGERDAS SEEKING PERMISSION TO CONDUCT POST-VERDICT JUROR INTERVIEWS

The United States respectfully submits this memorandum in opposition to the motion of

defendant Paul M. Daugerdas ("Daugerdas" or the "Defendant") seeking to conduct interviews of

the trial jurors.  For the reasons set out below, Daugerdas's request should be denied.

I.     FACTS

By letter dated August 2, 2012, Daugerdas seeks permission to interview the jurors who

served during the trial of Daugerdas and the other defendants between March and May 2011.

Ignoring the fact that the jury's verdict with respect to co-defendant David Parse remains intact,

Daugerdas argues that possible impeachment of the jury's verdict through post-trial interviews is not

an issue because he was granted a new trial.  Moreover, Daugerdas contends — without citing any

case law — that he has a constitutional right to conduct juror interviews, and, further, that such

interviews are critical for him to gain an understanding of "a trial strategy's or trial performances's

strengths and weaknesses." Daugerdas Ltr. at 2.  Finally, Daugerdas argues that juror interviews will

aid the administration of justice by helping him focus his presentation during the re-trial on the important issues and evidence.  Id.

## II.    APPLICABLE LEGAL PRINCIPLES

"Federal courts generally disfavor post-verdict interviewing of jurors."  United States v. McDougal, 47 F. Supp.2d 1103, 1104 (E.D. Ark. 1999).  See Haeberle v. Texas Int'l Airlines, 739 F.2d 1019, 1021 (5th Cir. 1984) (post-verdict interviews "generally disfavored"); Olsson v. A.O. Smith Harvestore Products Inc., 696 F. Supp. 411, 412 (S.D. Ind. 1986) ("Most courts do not allow attorneys to contact jurors after the conclusion of trial."); Sixberry v. Buster, 88 F.R.D. 561, 561-62 (E.D. Pa.1980) ("It is well settled that the Federal courts strongly disfavor any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset and harass them"); Shoen v. Shoen, 933 F. Supp. 871, 876 (D. Ariz.1996) (local rule limiting juror contact reflects public policy of allowing jurors to complete their service without concern for future consequences.), aff'd,113 F.3d 1242 (9th Cir.1997).

The concern animating the prohibition on post-verdict juror contacts is that "unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties."  United States v. Kepreos, 759 F.2d 961, 967 (1st Cir. 1985) (citing United States v. Moten, 582 F.2d 654, 664-66 (2d Cir. 1978) (juror interviews warranted only where there was at least "a reasonable suspicion that the jury may have been corrupted")) (other citations omitted).  See also Ida v. United States, 191 F. Supp.2d 426, 433 (S.D.N.Y. 2002) (same); United States v. Driscoll, 276 F. Supp. 333, 337 (S.D.N.Y. 1967) (enjoining defense counsel and investigators from contacting jurors, observing: "If jurors are

conscious that they will be subjected to interrogation or searching hostile inquiry as to what occurred

in the jury room and why, they are almost inescapably influenced to some extent by that anticipated

annoyance. . . . [A] searching or pointed examination of jurors in behalf of a party to a trial is to be

emphatically condemned.  It is incumbent upon the courts to protect jurors from it.") (quoting Rakes

v. United States, 169 F.2d 739, 745-46 (4th Cir. 1948)).

      In addition to the concerns regarding the integrity of the jury process itself, certain limits on

post-trial inquiry into jury verdicts are necessary in the interest of finality.  Moten, 582 F.2d at 664.

As Judge Weinstein explains:

> The federal court are notoriously reluctant to permit either informal post-verdict
> interviews with or testimony from discharged jurors.  This approach seeks to (1)
> protect jurors from annoyance and  embarrassment, (2) preserve jurors' freedom of
> deliberation, and (3) enhance the stability and finality of verdicts.  It is these concerns
> that are the foundation for Rule 606(b)(1)'s proscription against the receipt of
> evidence concerning the jury's internal deliberations or any juror's thought processes
> for the purpose of impeaching the verdict.

Weinstein's Federal Evidence § 606.06[1], at 606-70 (2012).

      The foregoing principles have been applied by courts to preclude post-verdict interviews even

where counsel wished to use the fruits of the interview to decide whether to pursue a re-trial, United

States v. McDougal, 47 F. Supp.2d at 1104, or where counsel were seeking to improve their

"techniques of advocacy." Haeberle v. Texas Int'l Airlines, 739 F.2d at 1022.  See also Olsson v.

A.O. Smith Harvestore Products, Inc., 696 F. Supp. at 412 ("[A]bsent a showing of evidence of juror

impropriety, an attorney is not permitted to invade the province of the jury room for the purpose of

improving his skills as a trial lawyer by ascertaining from the jurors which facts of the trial

influenced their verdict").

## III.   DISCUSSION

Application of the foregoing factors warrants rejection of Daugerdas's request.   First, Daugerdas has failed to demonstrate good cause, through the citation to any case law or otherwise, for overriding the general rule prohibiting juror contact.   As in <u>McDougal</u> and <u>Haeberle</u>, the reasons advanced for intruding on the jurors' post-verdict privacy — the honing of advocacy skills or learning which pieces of evidence might have most influenced the jury — are plainly insufficient. The jurors who served admirably in this case gave almost four months of their lives in fulfilling their civic duty.   Their expectation that the completion of their service would allow them to get on with their lives without harassment or further intrusion should be respected by the parties — and fully protected by the Court.

Second, although Daugerdas is correct in noting that he was granted a new trial, and thus the validity of the jurors' verdict is not something he has a motivation to impugn, his argument fails to appreciate that the jury's verdict with respect to David Parse remains very much in place.   Thus, to the extent that Daugerdas's questioning of the jurors strays — inadvertently or otherwise — into the manner by which the jury reached its verdict, such questioning poses a direct threat to the sanctity of the jury's deliberative process and the finality of the verdict as it relates to David Parse.   And the avowal of Daugerdas that he is not attempting to influence the finality of the Parse verdict is not enough to tip the balance of interests in his favor.   <u>Cf.</u> <u>United States v. Skilling</u>, No. CR H-04-025, 2006 WL 3030662, at *2 (S.D. Tex. 2006) (district court denied motion for juror interviews: "Given the rhetorical skills of Skilling's attorneys and the lack of familiarity of jurors with questioning techniques, the court can easily anticipate scenarios in which, through the use of benign, oblique questions by his attorneys, Skilling may obtain comments from the members of the jury which, when

argued out of context, may be used as alleged evidence of bias or misconduct").

In sum, any legitimate interest Daugerdas may have in interviewing jurors is overwhelmingly outweighed by the interest of the jurors in their privacy and the "public's interest in well-administered justice." Id. (quoting Haeberle, 739 F.2d at 1022).

## III.   CONCLUSION

Daugerdas's request to interview the trial jurors should be denied.

Dated: New York, New York
       August 14, 2012

Respectfully submitted,

PREET BHARARA
United States Attorney

By:      s/Stanley J. Okula, Jr.
         Stanley J. Okula, Jr.
         stan.okula@usdoj.gov
         Nanette L. Davis
         nanette.l.davis@usdoj.gov
         Jason P. Hernandez
         jason.hernandez2@usdoj.gov
         Assistant United States Attorneys
         One St. Andrew's Plaza
         New York, NY 10007
         (212) 637-1585/1117/1024

## CERTIFICATE OF SERVICE

       I hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on the above date.

By:      _s/Stanley J. Okula, Jr._
              Stanley J. Okula, Jr.
              stan.okula@usdoj.gov
              Nanette L. Davis
              nanette.l.davis@usdoj.gov
              Jason P. Hernandez
              jason.hernandez2@usdoj.gov
              Assistant United States Attorneys
              One St. Andrew's Plaza
              New York, NY 10007
              (212) 637-1585/1117/1024